IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

STUART DENMAN, individually;
JULIA DENMAN, individually; and
DENMAN FARMS, LLC     PLAINTIFFS

v.     CIVIL ACTION NO. 2:10-CV-00133-GHD

TALLAHATCHIE DUCKS, LLC and
MARK McILWAIN, individually     DEFENDANTS

OPINION

This case came before the Court upon a bench trial beginning on April 9, 2012, pursuant to a dispute concerning a contract between the Plaintiff Denman Farms and the Defendant Tallahatchie Ducks, LLC. Upon careful consideration of the testimony and exhibits presented at trial, as well as the parties' post-trial submissions, the Court finds that the contract must be interpreted as written and that the Plaintiffs are not entitled to the relief sought. The following constitutes the findings of fact and conclusions of law reached by this Court pursuant to Rule 52 of the Federal Rules of Civil Procedure:

*A. Findings of Fact*

The Plaintiffs own real property in Tallahatchie County, Mississippi.[1] The Defendant Tallahatchie Ducks, LLC leased approximately 2,000 acres of the subject real property, pursuant to a lease of duck and deer hunting rights ("lease agreement") entered into by the parties through their respective attorneys as of August 28, 2007, for a period of ten years to expire on August 28, 2017. Pursuant to the lease agreement, Tallahatchie Ducks, LLC constructed an 8,000 square-

---

[1] At trial, the Defendants introduced the argument that the Plaintiffs were not the actual owners of the real property because the land is in a revocable trust. However, the Plaintiff Stuart Denman testified that he and his wife, the Plaintiff Julia Denman, are beneficiaries of the revocable trust. The Court is satisfied that the Plaintiffs owned the real property and had the authority to enter into the lease agreement.

1

foot hunting lodge on the real property and purchased fire and extended risk insurance coverage for the lodge from Star Net Insurance Company. On February 7, 2010, the lodge burned. Star Net Insurance Company paid Tallahatchie Ducks, LLC $438,000 for the replacement cost of the hunting lodge. The Defendant Mark McIlwain, sole member of Tallahatchie Ducks, LLC, used the funds to satisfy loans he had made to Tallahatchie Ducks, LLC for the construction of the lodge.

*B. Conclusions of Law*

This action invokes the Court's diversity jurisdiction. When sitting in diversity, this Court applies Mississippi substantive law. *See In re Knight*, 208 F.3d 514, 516 (5th Cir. 2000). "The district court's interpretation of a contract, including the initial determination whether the contract is ambiguous, is a conclusion of law." *ConAgra, Inc. v. Country Skillet Catfish Co.*, 96 F. App'x 171, 174 (5th Cir. 2004) (citing *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751 (Miss. 2003) (internal citation omitted)). "Contract and real property law are traditionally the domain of state law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982) (citing *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S. Ct. 1096, 59 L. Ed. 2d 296 (1979) and *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)).

The Court notes that the presence of the hunting lodge on the real property owned by the Plaintiffs is not dispositive of whether the Plaintiffs had an ownership interest in the lodge. "It has been repeatedly held, that a building or other fixture, which is ordinarily a part of the realty, is personal property when placed on the land of another by contract or by consent of the owner." *Jim Walter Corp. & Mid-State Homes, Inc. v. Gates*, 370 So. 2d 928, 930 (Miss. 1979) (quoting *Weathersby v. Sleeper*, 42 Miss. 732, 1869 WL 2726, at *7 (Oct. Term 1869)). Thus, in the case

2

*sub judice*, the hunting lodge constructed on the Plaintiffs' land pursuant to the lease agreement executed by the parties is personal property, not part of the realty. The Court looks to the four corners of the contract itself to determine the rights and duties of the parties with respect to any improvements or fixtures. *See Check Cashers Express, Inc. v. Crowell*, 950 So. 3d 1035, 1041 (Miss. App. 2007).

Mississippi law of contracts dictates that courts must interpret a contract as written, unless it is ambiguous. *Royer Homes*, 857 So. 2d at 751. "The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." *Id.* at 752 (citing *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989)). The court "is concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." *Id.* (quoting *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) (internal citation omitted)).

The court looks to the four corners of the contract, that is, the language of the contract itself, as a whole. *See Ivison v. Ivison*, 762 So. 2d 329, 335 (Miss. 2000); *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992). If the court finds the agreement to be ambiguous, the court should consider extrinsic or parol evidence to determine the meaning of the contract. *See Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990). But "the mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Royer Homes*, 857 So. 2d at 753 (quoting *Turner*, 799 So. 2d at 32 (internal citation omitted)). And "if a contract is clear and unambiguous, then it must be interpreted as written." *U.S. Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

The lease agreement in this case was drafted by and agreed to by both parties through their respective attorneys. The lease agreement provides that it is "for the mutual benefit" of both parties and otherwise provides in pertinent part:

> 3. Renter [Tallahatchie Ducks, LLC] intends to construct a hunting lodge on the premises at his expense.[2] Upon expiration of the primary ten (10) year term, the hunting lodge shall become the property of Owner [Denman Farms].
>
> 4. Renter [Tallahatchie Ducks, LLC] shall maintain insurance on the hunting lodge against fire and extended risks on a replacement cost basis. Renter [Tallahatchie Ducks, LLC] is responsible to insure its contents. For purposes herein, "replacement cost basis" shall mean the actual replacement cost of the hunting lodge from time to time. The cost of insurance will be paid by renter during the primary ten (10) year term. Owner [Denman Farms] shall be responsible to maintain, at his expense, said insurance during any renewal of this lease. The responsible party shall furnish the other party with proof of insurance. Further, Renter [Tallahatchie Ducks, LLC] shall pay property taxes on the hunting lodge, utilities and all maintenance of the hunting lodge during the primary ten (10) year term.

The language of the lease agreement in its entirety reveals that Tallahatchie Ducks, LLC intended to cover the costs of constructing the hunting lodge on the leased real property, and that after ten years, Denman Farms would own the lodge. The lease agreement further provides that Tallahatchie Ducks, LLC would maintain fire and extended risk insurance on the lodge on a replacement cost basis.

The lease agreement fails to provide two key pieces of information: (1) what ownership interest, if any, Denman Farms would have in the lodge during the primary ten-year term of the lease; and (2) which party would be the beneficiary of the fire and extended risk insurance policy.

---

[2] Renter, lessee, pursuant to the terms of the contract, was not obligated to construct the lodge.

4

The Court finds that both parties had an insurable interest in the lodge, but the lease agreement as a whole reveals that the parties intended Tallahatchie Ducks, LLC to shoulder the majority of costs associated with the property until the expiration of the primary ten-year lease term. These costs include several incidental to property ownership: (1) building costs associated with the lodge; (2) liability for actions at law that result from entering into and executing the lease agreement; (3) all property taxes, utilities, and maintenance of the lodge; (4) fire and extended risk insurance on the lodge; and (5) liability insurance on the lodge. The lease agreement further provides that in the event of Tallahatchie Ducks, LLC's default on the lease, "all of Renter's [Tallahatchie Ducks, LLC's] real property and fixtures located on the premises shall become the sole property of Owner [Denman Farms]." This language reveals that the improvements and fixtures on the premises would not be the property of Denman Farms for the primary ten-year term of the lease, in the absence of default.

The lease agreement provides with respect to insurance that Tallahatchie Ducks, LLC must maintain both fire and extended risk insurance and liability insurance on the lodge. Although the lease agreement requires the Defendants to list the Plaintiffs as additional insureds on the liability insurance policy, the lease agreement is silent with respect to the required insureds on the fire and extended risk insurance policy.

The Court notes that the parties are highly educated with significant business experience. The Plaintiff Stuart Denman holds an advanced degree in veterinary medicine and has practiced his profession and engaged in significant farming and leasing operations for several years. The Defendant Mark McIlwain holds an advanced degree in dental medicine and has engaged in the practice of dentistry in Alabama for several years; he has also engaged in significant business endeavors over the years. The parties also had experienced attorneys representing them

throughout the negotiation and preparation of the lease agreement. Denman testified by deposition that McIlwain's attorney sent an initial proposed draft of the lease agreement, which Denman rejected. Pl.'s Dep. [38-3] at 11. Denman then testified that he faxed over a lease to use as a go-by (*see* Pl.'s Ex. 1a), and McIlwain's attorney added language into the proposed lease about building the lodge and insurance coverage on the lodge. *Id.* The Defendants proposed language which would have required the Plaintiffs to pay a portion of the insurance and taxes on the hunting lodge during the primary ten-year term of the lease. The proposed draft contained the following language:

> The costs of insurance will be paid by renter [Tallahatchie Ducks, LLC] during the first year. Each year thereafter, owner [Denman Farms] shall pay an additional ten percent (10%) of the insurance cost. By way of example, in year two (2) renter shall pay 90% and owner shall pay 10% of the insurance cost; in year 3, renter shall pay 80% and owner shall pay 20% etc.

Pl.'s Ex. 1c. Denman rejected this draft, stating that he did not want any responsibility for the lodge for the first ten years. Denman testified at trial:

> I told [McIlwain] I don't want another expense. I want $65,000 for hunting on my land. I'm not going to pay the taxes. I'm not going to pay the insurance. This is if you build a lodge, you will be responsible for it for the first ten years and I'll pick it up the next ten.

Trial Tr. Vol. I at 91.

The Court is of the opinion that it need not look beyond the four corners of the lease agreement to ascertain the parties' intent with respect to the lodge. The lease itself does not provide that Plaintiffs have any ownership interest in the lodge until the expiration of the primary ten-year term of the lease or Defendants defaulted on the lease. The lease agreement similarly does not specify any of the following: that Denman Farms must be listed as an additional insured on the fire and extended risk insurance policy; that the lodge must be rebuilt by Tallahatchie

6

Ducks, LLC; or that Denman Farms is entitled to any of the fire and extended risk insurance proceeds. The fact that the Plaintiffs are not listed in the lease agreement as having an interest in the lodge and in the insurance proceeds on the sworn statement of loss is unfortunate, but the Court feels the language of the contract controls and is not ambiguous. Therefore, the Plaintiffs are not entitled to any legal or equitable relief.

*A. Conclusion*

Based on the foregoing authorities and analysis, the Court finds that the lease agreement must be enforced as written. Thus, the Plaintiffs are not entitled to any compensatory or equitable relief, and the Court rules in favor of the Defendants.

A separate order in accordance with this opinion shall issue this day.

THIS, the 18th day of June, 2012.

_____
SENIOR JUDGE

7